## IN RE: THE MARRIAGE OF EARL J. SCHMITKE
### Case No. 88-2041-23
Sixth Judicial Circuit, Pinellas County
December 19, 1990

## OPINION OF THE COURT

Anthony Rondolino, Circuit Judge.

### *FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE*

This cause came on to be heard on the 13th day of September, 1990 and on the 17th and 18th day of October, 1990. The Court had previously entered a Summary Judgment as to Count II of the Wife's Counterclaim for Battery on the 10th day of May, 1990 and had

entered a Judgment on the pleadings on the 4th day of June, 1990 as to Count IV and V of the Wife's Counterclaim.

The Court having received the Affidavit of Residency Witness, having heard the Joint Stipulation of the Parties regarding alimony, having received into evidence the deposition of Dr. Charles Brown, a medical doctor, and having admitted into evidence portions of the deposition of Dr. Thomas Carson, a medical doctor, having heard the testimony of the accountants called by each party, having heard the testimony of the parties, and having received both extensive written and oral argument from the attorneys for each party, the Court makes the following findings of fact, and renders the following judgment:

1. JURISDICTION:

This Court has jurisdiction over the subject matter and the parties herein.

2. IRRETRIEVABLY BROKEN:

The marriage between the parties is irretrievably broken.

3. STIPULATION:

a) The former marital home would be listed immediately with a competent Multiple Listing Service Company. It is expected that the former marital home will sell in three months from October 17, 1990.

b) For six months after the home is sold, or for a total of nine months, from October 17, 1990, if it takes more than three months to sell the home, the Husband will continue to pay alimony in the same amount as he has heretofore paid. The amount of temporary alimony that the Husband has been paying is Two Thousand Six Hundred and Eighteen Dollars ($2,618.00) per month.

c) After the six or nine month period, the Husband shall pay, by Income Deduction Order through the Registry of the Court the amount of Two Thousand Two Hundred Dollars ($2,200.00) per month as permanent, periodic alimony until the death of either party, or the remarriage of the Wife.

d) The Wife may petition this Court for an extension of the nine month period on a showing that, despite a best faith effort, the home has not sold within the time period envisioned.

e) Attorneys fees, suit monies and costs: The Court should retain jurisdiction to address the issue of attorney fees, suit monies and costs both as to entitlement and reasonableness.

The Court finds the stipulation to be reasonable and in the best interest to the parties.

## 4. EQUITABLE DISTRIBUTION:

The parties, who separated on or about March 1, 1988, were married for thirty-four (34) years. During the marriage, the Husband and Wife assumed traditional roles. The Wife was the homemaker, Wife, and primary caretaker of the minor children, while the Husband was the breadwinner. There were three children born to this marriage, all of whom were adults at the time of the final hearing. The Wife, who is 54 years old, cannot secure employment other than that available at entry level. The Wife desires to work part-time so that she may travel to see her children and grandchildren.

The Husband, who has been employed by British Airways for many years, has a vested interest in his retirement and profit sharing plans.

The Court finds justification in this particular case to distribute the assets and liabilities between the parties in unequal shares. The justification for this equitable distribution is based on the following facts:

A. *Ill Health:* The testimony in this case demonstrates the Wife has and will continue to have health problems. She has suffered from migraine headaches which have been more severe in recent years. Considerable evidence was presented regarding her difficulties resulting from contracting venereal warts.

The Court notes that the testimony regarding this disease was that it is most commonly transmitted by sexual contact. The Wife testified that she never engaged in sexual relations with anyone except the Husband, yet the Husband admitted to extramarital affairs. Evidence was also adduced that the Wife had, some 25 years ago, contracted gonorrhea from the Husband. Taking all of the facts into consideration, the Court finds that the present health problem was precipitated by the adulterous conduct of the Husband. The Court has been careful in evaluating this matter to avoid any consideration of this conduct in a punitive way. See *Noah v Noah,* 1124 So.2d 491 (Fla. 1986).

The Court concludes, however, that the disease has diminished the physical and mental health of the wife. Apart from the numerous painful treatments ultimately leading to her hysterectomy, the testimony indicated she continues to suffer emotional and psychological difficulties from the experience. Additional evidence suggested an increased risk of cancer during her life.

B. *Unequal Earning Capacity:* The evidence in this case shows the Wife has little, if any, marketable job skills. She continued working after the parties were married for approximately one year but in 1957, upon the birth of their first child, she stopped work. During the last 33

years, she assumed the duties of Wife/mother and homemaker with some periods of sporadic employment. The Wife has thus sacrificed her career opportunities, her potential to develop a viable employment skill and to create a position of seniority or job security. The Court is not unmindful of the impact her age may have upon the options available to her in today's workplace.

C. *Unequal Opportunity to Generate Retirement Benefits:* In addition to the above noted disparity relating to earning capacity and opportunity, the Wife is in a position which makes it difficult if not impossible to secure retirement benefits. The evidence shows the family moved from state to state during the marriage facilitating the Husband's career advancement. His present position will avail not only continued employment income, but also builds an ever increasing retirement benefit. The Wife at her age and health could not (even with considerable vocational training) ever hope to generate a comparable annual retirement benefit.

In considering the above mentioned factors in light of *Colucci v Colucci,* 392 So.2d 577 (Fla. 3d DCA 1980) and *Moore v Moore,* 543 So.2d 252 (Fla. 5th DCA 1989), the Court concludes a strict adherence to a 50/50 split of the assets in this case would not be appropriate. The Court finds the wife's domestic endeavors were at least equivalent to her husband's wage earning ones, yet she leaves the marriage in an unequal and economically disadvantaged position. This is true even considering the alimony award contained in this Order. The Court notes the Wife will need to obtain employment to supplement the alimony amount to meet her expenses and maintain a standard of living close to that which she enjoyed during the marriage. The circumstances detailed above, particularly regarding her health and security, indicate the Court must do more to balance the scales in this case.

5. *Assets and Liabilities:*

Evidence and testimony presented to the Court that the following assets and liabilities are available for distribution:

a) The marital home, which has an approximate net value of $75,000.00 and will be sold pursuant to the stipulation detailed herein.

b) The furnishings of the former marital home with a value of approximately $2,500.00.

c) The automobile which the parties presently drive. The Husband's 1984 Oldsmobile valued at $2,500.00 and the Wife's 1983 Chevrolet valued at $2,375.00.

**199**

d) Personalty in the form of:

1) the wife's collectibles

2) jewelry worn by either party

3) a diamond necklace containing a diamond formerly belonging to the husband's grandmother

4) A musical instrument known as a "melodica" of some sentimental value to the husband

5) a charge of the Schmitke genealogy

e) The Husband's pension program with British Airways, having an approximate present value of $139,000.00.

f) The two British Airways 401K savings plans having an approximate value of $90,000.00.

g) The Individual Retirement Plan established by the Husband valued at $14,440.00 as of 9/30/90.

h) Two life insurance policies with a cash value of $4,326.00.

i) Cemetery plots.

j) The Wife's debt to the Internal Revenue Service for the penalty associated with the early withdrawal of an Individual Retirement Account in the amount of $3,686.00.

k) The mortgage on the marital home.

After considering all of the evidence and testimony in this cause, the Court has determined the approximate disposition of the marital estate must provide the Wife a slightly greater than equal share.

IT IS THEREFORE ORDERED AND ADJUDGED:

1. The marriage between the parties is dissolved because it is irretrievably broken.

2. The Stipulation regarding alimony entered into by the parties is approved and ratified.

a) The former marital home will be listed immediately with a competent Multiple Listing Service Company.

b) For six months after the home is sold, or for nine months, from October 17, 1990, if it takes more than three months to sell the home, the Husband will continue to pay alimony in the same amount as he has heretofore paid. The amount of temporary alimony that the Husband has been paying is Two Thousand Six Hundred and Eighteen Dollars ($2,618.00) per month.

c) After the six or nine month period, the Husband shall pay, by

Income Deduction Order through the Registry of the Court, the amount of Two Thousand Two Hundred Dollars ($2,200.00) per month as permanent, periodic alimony until the death of either party, or the remarriage of the Wife.

d) The wife may petition this Court for an extension of the nine month period on a showing that, despite a best faith effort, the home has not sold within the time period envisioned.

3. The net proceeds of the sale of the former home shall be divided between the parties. The Wife shall receive 55% of the net profit and the Husband 45%. The Husband shall be given credit for the reduction in the mortgage on the home during the pendency of this action.

4. The Wife shall be responsible for her own health insurance and general medical care, however, Husband shall be responsible for all future medical costs the Wife might incur as a result of the venereal warts transmitted to her. *Schiffhauer v Schiffhauer,* 482 So.2d 838 (Fla. 1st DCA 1986). He shall also be responsible for any cost of coverage which is increased due to the prior medical history attributable to the sexually transmitted diseases. The Husband will give full and complete cooperation to the Wife in assuring that she receives all of her rights and entitlements under the COBR Act.

5. The Wife is awarded 55% of the Husband's pension with his employer, British Airways. Her portion shall be 55% of the value of the pension as of March 1, 1988. Increases in the Wife's portion of this pension other than those attributable to the Husband's contribution or profit sharing shall accrue to her benefit.

6. The Wife is awarded 55% of the Husband's IRA. Her 55% portion shall be based on the value of the IRA as of March 1, 1988, plus 55% of any interest that accrued on that amount.

7. The Wife is awarded 55% of both of the 401K savings plans that are in the name of the Husband. Her 55% portion shall be based on the value of the IRA as of March 1, 1988, plus 55% of any interest that accrued on that amount.

8. The attorney for the Wife is directed to prepare the required Qualified Domestic Relations Orders for the Court's signature within 15 days of this Judgment.

9. The Husband is awarded the following personal property:

a) THe Husband's grandmother's diamond which is now set in a necklace. The Husband is entitled to the diamond, but not the necklace which shall go to the Wife.

b) The musical instrument known as a "melodica".

201

c) A chart showing Schmitke genealogy.

10. Each party shall keep the jewelry which they wear.

11. The Wife is awarded all of the other furniture and furnishings in the former marital home as her sole and exclusive possession.

12. The Husband is awarded the life insurance policies on his life and the cemetery plots.

13. Each party shall have as her/his sole and exclusive possession the automobile each is driving. Each shall be solely responsible for all of the liability associated with the ownership of that vehicle, and shall hold the other harmless from all liability associated with the ownership of that vehicle.

14. The Husband shall be responsible for all debts in his own name alone, to include the debts incurred for the purpose of making a payment to the Wife's attorney. He shall have sole and exclusive liability for the debts in his name alone.

15. The Husband shall be responsible for 45% of the debt which the Wife owes to the Internal Revenue Service. All other debts in the Wife's name alone, shall be her sole and exclusive liability.

16. The Court reserves jurisdiction to consider the award of attorney's fees, costs and suit money to the Wife.

17. The Court further reserves jurisdiction to enforce this Judgment, to modify this Judgment to make amendments to enable the Plan Administrator to comply with the provisions of this Order, and to enter such further Orders and Judgments as are in the interest of justice and equity.

IT IS SO ORDERED this 19th day of December, 1990.